UNITED STATES v. BERNARD et al.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

No. 2,180.

1. PUBLIC LANDS (§ 8*)—TRESPASS—RIGHTS OF UNITED STATES.
     Irrespective of Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), relating to trespass and depredations on the public domain, the United States has all the common-law rights of an individual in respect to depredations committed on public lands, and may come into equity and avail itself of summary remedies given by such court in such cases.

     [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 8, 148; Dec. Dig. § 8.*]

2. PUBLIC LANDS (§ 19*)—DEPREDATIONS—REMEDIES—EQUITY—STATUTES.
     Act Cong. Feb. 25, 1885, c. 149, U. S. Comp. St. 1901, p. 1524), makes all inclosures of public lands illegal, and enlarges the equitable jurisdiction of the federal courts in enjoining such inclosures, extending it to injunctions against maintaining fences, the effect of which is to inclose public lands. *Held* to give the courts of the United States jurisdiction in equity over a suit to restrain the inclosure of public lands and to recover damages for the use thereof as incidental relief.

     [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

———————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. Public Lands (§ 19*)—Inclosure—Use—Damages.**

Where defendants wrongfully inclosed public lands and deprived the public of the use thereof, they were liable to the government for the reasonable value of such use, notwithstanding the lands were not injured thereby, and would not have been leased by the government, if they had not been inclosed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

**4. Public Lands (§ 19*)—Equitable Relief—Exemplary Damages.**

Where complainant sought relief in equity for the wrongful inclosure of public lands, it waived its right to claim exemplary damages which it might have recovered at law; equity having no jurisdiction to award such damages.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

Appeal from the District Court of the United States for the District of Arizona; Julian W. Mack, Judge.

Suit by the United States of America against N. C. Bernard and others. From a judgment of dismissal, the United States appeals. Reversed and remanded.

J. E. Morrison, U. S. Atty., of Bisbee, Ariz., and J. C. Forest, Asst. U. S. Atty., of Prescott, Ariz.

John B. Wright, of Tucson, Ariz., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The government filed a complaint in the court below, alleging in substance that the appellees had, without right or authority of law, on or about November 1, 1908, knowingly, willfully, and recklessly, without the appellant's consent and in disregard of its rights, inclosed with fences 840 acres of the public lands of the United States, and that they had maintained said fences and inclosure for their own exclusive use and occupancy continuously thereafter, and had caused and permitted a large number of their cattle and other live stock to graze upon the lands embraced within said inclosure, to the actual damage of the appellant in the sum of $600. The relief prayed for was that the inclosure be adjudged unlawful, that the appellees be ordered to remove said fences, and adjudged to pay $600 actual damages and $500 exemplary damages. Prior to the trial of the cause, the appellees removed the fences. The court, upon a showing of that fact, dismissed the case at the cost of the appellees, holding that the United States was not entitled to damages.

Upon appeal to this court, the sole question presented is whether the court below erroneously denied the appellant damages. It requires the citation of no authority to sustain the general proposition that, where a court of equity has entertained jurisdiction of a controversy for any purposes, or on any ground, it may retain jurisdiction for the purpose of administering complete relief or doing complete justice with respect to the entire adjustment of the subject-matter in controversy. But the appellees deny that the court below, in entertaining jurisdiction of the case at bar, was exercising the general powers of

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an equity court, or that it was authorized to grant any of the incidental relief which ordinarily pertains to suits in equity, and they contend that the jurisdiction was special and limited, and measured by the express terms of Act Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), and that, since that statute confers jurisdiction only to grant injunctions to restrain violations of the act and to order the destruction of inclosures, the court was powerless to grant other relief such as it might grant in an ordinary suit for an injunction.

[1] There can be no question that, irrespective of the act of 1885, the United States has all the common-law rights of an individual, in respect to depredations committed on the public lands. In Camfield v. United States, 167 U. S. 518–524, 17 Sup. Ct. 864, 867 (42 L. Ed. 260), Mr. Justice Brown said:

"It needs no argument to show that the building of fences upon public lands with intent to inclose them for private use would be a mere trespass, and that such fences might be abated by the officers of the government, or by the ordinary processes of courts of justice."

And he observed that if the act of February 25, 1885, be construed as applying only to fences actually erected upon public lands, it was manifestly unnecessary. In Cameron v. United States, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459, the court said that the suit provided for by the act was in the nature of a suit in equity.

In United States v. Brighton Ranch Co. (C. C.) 26 Fed. 218, the defendant had built a fence partly on its own land, and partly on land belonging to the government, and inclosing a tract of several thousand acres. The suit was in equity to compel the defendant, by mandatory injunction, to remove its fence from the government land, and thus leave the inclosed government land free from all obstructions to approach. The court said:

"The question made is whether the government can come into a court of equity and avail itself of the summary remedies given by such a court. We are of the opinion that it can; and, whether the act of the defendant comes within the technical definition of purpresture or that of a public nuisance, we are of the opinion that the government can come into a court of equity, and by its orders have an end put to this trespass on the public rights. * * * We think, too, an action of injunction is the appropriate remedy, and that an action of ejectment would not furnish full protection to the government."

This was held by Judges Brewer and Dundy on exceptions to the answer. On the final decision of the case (United States v. Brighton Ranch Co. [C. C.] 25 Fed. 465) Mr. Justice Miller said:

"I am of opinion that the United States is entitled to its injunction, mandatory as to so much of the fence complained of as exists, and prohibitory as to building any future fences, so far as either of them comes within the following principles: (1) There exists no right in the defendants to build any fence on the lands of the United States. (2) All lands are for this purpose lands of the United States, so long as the legal title remains in the United States. (3) It is the right of the United States, and its duty, to protect all such lands from this misuse in cases where there have been any kind of entries, whether of pre-emption, homestead, or private entry, though the purchase money be paid, so long as the legal title remains in the United States, except where these latter parties build their own fences, or give ex-

press license to others to do it. In these cases it holds the title in trust, and can maintain this bill to remove the fence or prevent its erection."

Those decisions were rendered in a case which was begun before the act of February 25, 1885 was adopted, and without discussion of or reference to that act.

[2] As we construe that act, it was its purpose, first, to render illegal all inclosures of public lands; and, second, to enlarge the equitable jurisdiction of the Circuit Courts in the matter of enjoining such inclosures, and to extend it to injunctions against maintaining fences on lands other than the public lands, with the effect to inclose the public lands; also to confer the same jurisdiction upon the District Courts. Its effect is to give to the courts of the United States jurisdiction in equity over such a case as the case at bar, and it should be held that the jurisdiction is as broad as the ordinary jurisdiction of courts of equity in the classes of cases in which injunctions may issue, and that it comprehends the granting of any appropriate relief ordinarily incidental to such a suit, such as an accounting and the awarding of damages.

[3] Notwithstanding that the acts of the appellee were deliberately done with full knowledge of the statute, and were continued in disregard of numerous notices to abate the inclosure, and that the value of the use of the inclosed public land was the full amount sued for, the appellees contend that no damages are recoverable by the government, for the reason that the public land of the United States has not been injured by their acts, that they have destroyed no government property, that the general public was licensed to pasture on the lands, and that others would have used the pasture on the lands if the appellees had not inclosed them. These reasons are not sufficient. It is true there has been no destruction of government property by the appellees, as in the case of cutting and removing timber, or taking turpentine sap from pine trees on government lands; but the appellees, by their wrongful act, have obtained the sole benefit of that which belonged to the United States, and was of value, the right to the use of which the government might have leased and thereby have obtained revenue. It is no answer to the claim of the government for damages to say that the government would not have used the land or derived any pecuniary benefit therefrom, and that the government had licensed the public to use it. The license was a general one, and was for the benefit of all the people who were in a situation to avail themselves of it, and it was for the public good, and the fact that the government would have received no money consideration for the use of the pasture lands inclosed by the appellees is no ground for saying that it may not recover damages measured by the actual value of that which belonged to the United States, and which the appellees took without authority of law, and against the prohibition of the law. The fact that a plaintiff in an action for continued trespass would have made no use of the land which the defendant has wrongfully used to his advantage and profit will not prevent the plaintiff from recovering the actual value of that which has been so used and acquired by the defendant. The measure of damages for an appropriation of land by

a continuing trespass is the worth of the use of the property. McWilliams v. Morgan, 75 Ill. 473; Western Book & Stationery Co. v. Jevne, 179 Ill. 71, 53 N. E. 565; Eno v. Christ, 25 Misc. Rep. 24, 54 N. Y. Supp. 400; Bunke v. New York Telephone Co., 110 App. Div. 241, 97 N. Y. Supp. 66, affirmed in 188 N. Y. 600, 81 N. E. 1161; Jacob Tome Inst. v. Crothers, 87 Md. 569, 40 Atl. 261.

[4] The appellant's counsel contend that the government is entitled to recover exemplary damages. In actions of trespass, where the injury is wanton or malicious, or gross and outrageous, or is done against the protest of the plaintiff, or in known violation of the law, the court may permit the jury to add to the measured compensation of the plaintiff further damages by way of punishment or example, the amount thereof to be left to the jury's discretion, in view of the special, peculiar circumstances of the case. But the function of a court of equity goes no farther than to award as incidental to other relief, or in lieu thereof, compensatory damages. It has no authority to assess exemplary damages. By applying to a court of equity for relief, the complainant waives all claim to vindictive damages. Bird v. Wilmington, etc., R. Co., 8 Rich. Eq. (S. C.) 46, 64 Am. Dec. 739.

The decree is reversed, and the cause is remanded to the court below, with instructions to assess and award damages against the appellees in accordance with the views herein expressed.