**TAYLOR v. SPURWAY et al.**

No. 7307.

Circuit Court of Appeals, Fifth Circuit.
July 24, 1934.

Rehearing Denied Sept. 1, 1934.

W. H. Burwell, E. B. Kurtz, W. L. Reed, and Marion E. Sibley, all of Miami, Fla., for appellant.

F. M. Hudson, Johnson H. Pace, Carl T. Hoffman, and S. D. Weissbuch, all of Miami, Fla., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Henry H. Taylor, as receiver of the City Trust Company, brought suit in equity in a state court against H. J. Spurway, receiver of the City National Bank in Miami, the Administrator Company, a corporation, Morgan S. McCormick, and 11 other named individuals. The suit was removed to the federal court. Motions to dismiss were filed by various defendants. The District Court declined to permit amendment of the bill, entered an order dismissing it for want of equity, and transferred the suit to the law side for further proceedings. This appeal is from that order.

The bill is quite lengthy and somewhat diffuse, but with appropriate allegations of knowledge and fraudulent intent, and in much greater detail than necessary to repeat, it substantially alleges the following state of facts:

On December 20, 1930, the City National Bank in Miami closed its door and shortly thereafter Spurway was appointed its receiver. The National Bank owned 880 shares of the capital stock of the City Trust Company, which passed into the custody and control of Spurway. The balance of the capital stock of the City Trust Company, consisting of 120 shares, was owned by McCormick and 11 other of the named defendants, each to the amount of 10 shares. The City Trust Company owned ⅔ of the stock in the Guardian Trust Company or 666⅔ shares. By reason of his controlling interest in the City Trust Company Spurway was also able to dominate the Guardian Trust Company.

The City Trust Company was solvent, having $76,580.81 cash on deposit in the First National Bank, and other assets, consisting of loans, discounts, and real estate mortgages, aggregating $154,695.83, while it owed exceeding $130,000 to creditors. McCormick and six others of the named defendants were its directors.

On January 20, 1931, the board of directors of the City Trust Company resigned and was replaced by a dummy board acting as agents for McCormick and Spurway. The board of directors of the Guardian Trust Company also resigned, and the new members of the board of the City Trust Company were elected as members of a new board of the Guardian Trust Company, making both boards of directors identical as to personnel. This interlocking board of directors then sold all the assets of the City Trust Company, except the cash, to the Guardian Trust Company, for $79,619.33 in cash, and $75,076.50 in promissory notes of the Guardian Trust Company payable on demand.

Prior to this transaction McCormick had organized a dummy corporation, called the Administrator Company, for the sole purpose of having transferred to it, as the ostensible purchaser, the capital stock of the City Trust Company. The Administrator Company had no capital or other assets with which to purchase the stock. Apparently, though it is not clearly alleged, all of said stock was transferred to it. After the sale of the capital assets of the City Trust Company to the Guardian Trust Company the new board of directors adopted a resolution declaring the City Trust Company in voluntary liquidation. This was confirmed by all the stockholders. Immediately thereafter a stockholders' liquidating dividend was declared to the Administrator Company as the sole stockholder and all the assets of the City Trust Company, consisting of $156,200.14 in cash and all the promissory notes given by the Guardian Trust Company, in the sum of $75,076.50, were transferred to the Administrator Company.

The Administrator Company did not have sufficient cash to carry out its agreement to purchase the stock of the City Trust Company. To make up the deficit Spurway transferred to the account of the City Trust Company money in his custody deposited as trust funds, the property of others, the security for which was held by the City Trust Company, and discounted notes of the Guardian Trust Company given to the City Trust Company. These funds were then transferred to the Administrator Company. Thereupon the stockholders of the City Trust Company were paid $200 a share for their stock out of the assets of the City Trust Company and in fraud of its creditors.

The bill prayed for a decree holding the purported sale of stock of the City Trust Company to be fraudulent, null and void, and placing the parties in status quo by requiring

the Administrator Company to indorse and deliver to certain named defendants their proportionate shares of the stock of the City Trust Company which they had formerly held; that Spurway, as receiver of the City National Bank, be required to pay and deliver to plaintiff $176,000 in cash, which he had fraudulently obtained; that the court temporarily enjoin Spurway as receiver from declaring any dividend to the depositors or creditors of the City National Bank pending the final decree and until $176,000 was returned to plaintiff as receiver of the City Trust Company, and for a permanent injunction on final hearing; that the court require an accounting and enter a money decree thereon against the defendants. The bill also prayed for general relief.

Appellees moved to dismiss the appeal on the ground that the order appealed from was interlocutory and not final. A sufficient answer is that the bill prays for injunctions temporary and final. Transferring the case to the law side in effect denied a preliminary injunction and is therefore appealable. Banco Mercantil Americano de Cuba v. Taggart Coal Co. (C. C. A.) 276 F. 388; General Electric Co. v. Marvel Rare Metals Co., 287 U. S. 430, 53 S. Ct. 202, 77 L. Ed. 408. The motion to dismiss is denied.

It appears from a memorandum opinion in the record that the District Court considered that on the allegations of the bill appellant was entitled to merely a money judgment for $200,000, and therefore had a plain and adequate remedy at law. The rule is well settled that to deprive a court of equity of jurisdiction the remedy at law must be as complete, practical, and efficient to the ends of justice and its prompt administration as the remedy in equity. If the remedy at law is doubtful, equity jurisdiction will not be defeated. Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Union Pacific Railroad Company v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110.

The allegations of the bill must be taken as true. They show that the City Trust Company had assets of approximately $230,000 and liabilities of about $130,000. Its assets were the common pledge of its creditors, and no liquidating dividend could be validly declared until the creditors had been satisfied in full. The defendants abstracted and converted to their own use at least $200,000 of these assets. Consequently, the creditors of the City Trust Company were defrauded of at least $100,000. The defendants received the assets, although converted into money by a very clever scheme, impressed with a trust ex maleficio, which created a lien in favor of the receiver as representing the creditors. A money judgment at law would not be a complete and adequate remedy in the premises as appellant was entitled to the benefit of the lien for what it may be worth.

The allegations of the bill are sufficient to show that the money received by Spurway in payment for the stock of the City Trust Company came into his hands impressed with a trust. It is contended by appellee that he has no fund in his custody as it is the duty of a receiver of a national bank to cover all moneys coming into his hands in liquidation of the bank's affairs into the treasury, subject to the order of the Comptroller who alone has power to declare dividends. While this is true, the receiver is required to conduct his affairs with honesty and fair dealing, and a suit will lie against him to determine the rights of parties claiming a lien on assets in his hands. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. If it should transpire that the receiver has no funds to respond to a judgment, it must be assumed that the Comptroller, although beyond the reach of process of the court rendering the judgment, will give effect to a valid judgment of a court of competent jurisdiction. Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146. We are not aware of any case in which the receiver of a national bank has been enjoined from disposing of funds in his custody, but he is not above the law and, if he be guilty of such gross fraud as alleged, a court of equity undoubtedly would have authority to do so.

The bill presents a case for an accounting. The entire assets of the City Trust Company were transferred to the defendants. Under the allegations of the bill the Guardian Trust Company and the Administrator Company were mere shells which a court of equity could disregard and follow the individuals who dominated them. It may well be that the assets received by the Guardian Trust Company have been liquidated for much more than the price ostensibly paid for them. Even though they may have realized less, the court would have jurisdiction to require an accounting.

The bill makes a case for the setting aside of the entire transaction and the restoration of the status quo ante. It is possible that the final judgment should take that form to do equity between the parties.

It is not necessary to speculate as to what the final judgment should be after proof made. There is a prayer for general relief, and if jurisdiction in equity attaches on any ground the court may decide any incidental question. Clark v. Wooster, 119 U. S. 322, 7 S. Ct. 217, 30 L. Ed. 392.

We think the court should have permitted an amendment to the pleadings. Under the provisions of equity rules 19 and 20 (28 USCA § 723), amendments to the pleadings for a better statement of the case are favored and may even be required by the court. We think it was an abuse of discretion on the part of the District Judge not to permit an amendment to the bill. We express no opinion as to whether this should have been done by interlineation or formal amendment. Western Union Telegraph Co. v. Atlanta & W. P. R. Co. (C. C. A.) 238 F. 36.

Reversed and remanded, with instructions to restore the case to the equity side, and for further proceedings not inconsistent with this opinion.

Reversed and remanded.